No. 26-14146

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

CAIR-FOUNDATION, INC., et al.,

*Plaintiffs–Appellants*,

v.

RON DESANTIS, et al.,

*Defendants–Appellees*.

On Appeal from the United States District Court
for the Northern District of Florida, No. 4:26-cv-521 (Winsor, J.)

# PLAINTIFFS–APPELLANTS' TIME-SENSITIVE REPLY IN SUPPORT OF AN INJUNCTION PENDING APPEAL

Ashley Gorski
Hina Shamsi
Patrick Toomey
Charles Hogle
Celin Carlo-Gonzalez
Natalie Smith
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
agorski@aclu.org

Daniel B. Tilley (FBN 102882)
**ACLU FOUNDATION OF FLORIDA**
4343 West Flagler Street, Ste. 400
Miami, FL 33134
(786) 363-2714
dtilley@aclufl.org

Scott D. McCoy
Aaron Fleisher
Diego A. Soto
Mary Ella W. Simmons
**SOUTHERN POVERTY LAW CENTER**
400 Washington Ave
Montgomery, AL 31604
(786) 347-2056
scott.mccoy@splcenter.org

Manoj S. "Sachin" Varghese
Mark L. Bailey
Kayla Polonsky Gannon
**BONDURANT, MIXSON & ELMORE, LLP**
1201 W. Peachtree St. NW, Ste. 3900
Atlanta, GA 30309
(404) 881-4100
varghese@bmelaw.com

*Attorneys for Plaintiffs–Appellants*

## TABLE OF CONTENTS

INTRODUCTION .......... 1

ARGUMENT .......... 3

I. The DTO Regime and Plaintiffs' Designations Violate the First Amendment. .......... 3

A. The First Amendment applies. .......... 3

B. The DTO regime and Plaintiffs' designations violate their freedom of association. .......... 8

C. The DTO regime and Plaintiffs' designations impose a prior restraint on speech and association. .......... 13

D. The DTO regime vests excessive discretion in Florida's executive. .......... 14

E. The DTO regime and Plaintiffs' designations fail First Amendment scrutiny. .......... 14

II. Plaintiffs Were Deprived of Due Process. .......... 15

III. The Remaining Factors Favor Plaintiffs. .......... 18

CONCLUSION .......... 19

# TABLE OF AUTHORITIES

## Cases

*Al Haramain Islamic Found., Inc. v. Dep't of Treasury*,
686 F.3d 965 (9th Cir. 2012) .......... 11

*Ams. for Prosperity Found. v. Bonta*,
594 U.S. 595 (2021) .......... 9, 11

*Arcara v. Cloud Books, Inc.*,
478 U.S. 697 (1986) .......... 5, 7

**Bantam Books, Inc. v. Sullivan*,
372 U.S. 58 (1963) .......... 5, 8, 14

*Bates v. City of Little Rock*,
361 U.S. 516 (1960) .......... 8

*Berry v. Crestwood Healthcare LP*,
84 F.4th 1300 (11th Cir. 2023) .......... 18

*Cavel Int'l, Inc. v. Madigan*,
500 F.3d 544 (7th Cir. 2007) .......... 3

**Holder v. Humanitarian Law Project*,
561 U.S. 1, 35 (2010) .......... 2, 9, 10, 11

*Holy Land Found. for Relief & Dev. v. Ashcroft*,
219 F. Supp. 2d 57 (D.D.C. 2002) .......... 11

*Holy Land Found. for Relief & Dev. v. Ashcroft*,
333 F.3d 156 (D.C. Cir. 2003) .......... 11, 16

*Humanitarian L. Project v. Reno*,
205 F.3d 1130 (9th Cir. 2000) .......... 15

*Jenkins v. McKeithen*,
395 U.S. 411 (1969) .......... 16, 17

*Mathews v. Eldridge*,
424 U.S. 319 (1976) .......... 15, 16

*McCullen v. Coakley*,
573 U.S. 464 (2014)....................................................................................15

*Minneapolis Star & Trib. Co. v. Minnesota Comm'r of Revenue*,
460 U.S. 575 (1983)......................................................................................7

*NAACP v. Button*,
371 U.S. 415 (1963)......................................................................................4

*Nat'l Council of Resistance of Iran v. Dep't of State*,
251 F.3d 192 (D.C. Cir. 2001).....................................................................15

*Norwegian Cruise Line Holdings, Ltd. v.*
*State Surgeon Gen., Fla. Dep't of Health*,
50 F.4th 1126 (11th Cir. 2022) .......................................................................6

*NRA v. Vullo*,
602 U.S. 175 (2024)....................................................................................13

*Paul v. Davis*,
424 U.S. 693 (1976)....................................................................................17

*People's Mojahedin Org. of Iran v. Dep't of State*,
327 F.3d 1238 (D.C. Cir. 2003)...................................................................16

**Roberts v. U.S. Jaycees*,
468 U.S. 609 (1984)...............................................................................9, 11

*Tandon v. Newsom*,
593 U.S. 61 (2021)........................................................................................3

*TikTok Inc. v. Garland*,
604 U.S. 56 (2025)........................................................................................6

*Touchston v. McDermott*,
234 F.3d 1130 (11th Cir. 2000) .....................................................................3

*United States v. Afshari*,
446 F.3d 915 (9th Cir. 2006) .......................................................................13

*United States v. James Daniel Good Real Prop.*,
510 U.S. 43 (1993) .......... 18

*United States v. O'Brien*,
391 U.S. 367 (1968) .......... 7

*Whole Woman's Health v. Jackson*,
595 U.S. 30 (2021) .......... 19

**Statutes**

Fla. Stat. § 775.33 .......... 8

Fla. Stat. § 775.34 .......... 12

Fla. Stat. § 874.05 .......... 12

Fla. Stat. § 874.10 .......... 8, 12

Fla. Stat. § 943.03102 .......... 2

**Other Authorities**

Brief of *Amici Curiae* Knight First Amendment Institute at Columbia University and the Foundation for Individual Rights and Expression in Support of Plaintiffs–Appellants' Time-Sensitive Motion for Injunction Pending Appeal, ECF No. 25 .......... 10

Declaration of Celin Carlo-Gonzalez, *CAIR-Found., Inc. v. DeSantis*, 4:26-cv-521-AW-MAF (N.D. Fla. Oct. 2, 2026), ECF No. 6-5 .......... 12

Plaintiffs' Reply in Support of Their Emergency Motion for a Preliminary Injunction, *CAIR-Found., Inc. v. DeSantis*, 4:26-cv-521-AW-MAF (N.D. Fla. Oct. 16, 2026), ECF No. 60 .......... 18

Press Release, CAIR Reaffirms Condemnation of Oct. 7th Attacks on Civilians, CAIR (Dec. 23, 2023) .......... 2

**Rules**

Fed. R. App. P. 8 .......... 3

## INTRODUCTION

Defendants advance a remarkable proposition: state officials may designate a U.S. civil rights nonprofit a "domestic terrorist organization," subject it and those who associate with it to sweeping criminal prohibitions, and effectively shutter its operations in Florida—without judicial approval, and without even implicating the First Amendment. If Defendants were correct, *any* state's executive officials could unilaterally silence disfavored American corporations without due process. The Constitution does not give Florida that power.

Despite Defendants' inflammatory and baseless accusations, Plaintiffs do not engage in any terrorist activity. App.187, 190. Tellingly, Defendants have *never* even identified the specific law they "determined" Plaintiffs are violating. But the crux of Defendants' assertion appears to be that CAIR has operated for three decades as a "front" for Hamas and the Muslim Brotherhood—while somehow escaping federal (or state) prosecution. Unsurprisingly, Defendants muster no actual evidentiary support. Instead, they claim that the Department of Justice "concluded," nearly twenty years ago, that CAIR provided material support to Hamas. Opp. 1. Defendants conveniently omit that DOJ has never charged CAIR with a crime. In reality, as the Secretary of State explained in 2015, "the U.S. government clearly does not consider CAIR to be a terrorist organization." App.196; *see also* App.181-83 (former State Department official explaining that no

credible evidence linked CAIR to terrorist financing or support). Defendants' other "evidence" relies heavily on guilt-by-association and an alleged statement from thirty years ago. App.106-111.[1] None of it comes close to establishing that Plaintiffs are "engaging in terrorist activity." Fla. Stat. § 943.03102.

Similarly inaccurate and overblown is Defendants' claim that recognizing the DTO regime's unconstitutionality would "doom" federal designation schemes. *See, e.g.*, Opp. 30, 33, 37. The overwhelming majority of organizations federally designated as "foreign terrorist organizations" ("FTOs") or "specially designated global terrorists" ("SDGTs") do not possess U.S. constitutional rights. For that reason alone, a ruling for Plaintiffs would have no bearing on almost any federal designations. And legally, the federal programs are based on uniquely *federal* powers, such as foreign policy, international commerce, and immigration. Those powers are grounded in distinct federal interests, require greater deference to federal fact-finding, and ultimately give the federal government greater latitude to regulate Americans' foreign activities than their domestic associations. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 35, 39 (2010) ("*HLP*"). And they are entirely absent here.

---

[1] Defendants' brief also cites, out of context, a portion of a three-year-old statement by CAIR's executive director. Opp. 2. In the same speech, he condemned antisemitism; he subsequently clarified his remarks; and he and CAIR have repeatedly condemned the October 7 terrorist attacks. *See* Press Release, CAIR (Dec. 23, 2023), https://perma.cc/N4E2-45XW

## ARGUMENT

Defendants misstate the standard governing an injunction pending appeal. Opp. 12. Sitting en banc, this Court has held that petitioners must show "a substantial likelihood that they will prevail," *Touchston v. McDermott*, 234 F.3d 1130, 1132 (11th Cir. 2000)—not that "the legal rights at issue are indisputably clear," Opp. 12 (citation omitted). The latter standard has sometimes applied when a litigant asks the *Supreme Court* to issue an injunction under the All Writs Act; it does not apply to a motion in a federal circuit court governed by FRAP 8. *See Cavel Int'l, Inc. v. Madigan*, 500 F.3d 544, 547-48 (7th Cir. 2007); *Tandon v. Newsom*, 593 U.S. 61 (2021) (granting injunction pending appeal under "substantial likelihood" standard). Regardless, the legal rights at issue are indisputably clear.

### I. The DTO Regime and Plaintiffs' Designations Violate the First Amendment.

#### A. The First Amendment applies.

Defendants' threshold argument—that the DTO regime and Plaintiffs' designations do not trigger First Amendment scrutiny, Opp. 13-19—is meritless.

Plaintiffs are not arguing that "any regulation" of them triggers First Amendment scrutiny. Opp. 13. Nor are Plaintiffs seeking exemptions from ordinary criminal and civil laws, which carry with them well-established

procedural protections. Rather, Plaintiffs are arguing that First Amendment scrutiny applies because:

(1) The DTO regime grants Florida officials unprecedented, excessive discretion to convert First Amendment-protected speech and association into criminal speech and association;

(2) The scope and severity of the criminal and civil sanctions that apply to Plaintiffs and third parties impose a disproportionate burden on Plaintiffs' First Amendment-protected speech and association. Mot. 20-21; and

(3) As Defendants' own briefing confirms, what Defendants are calling "terrorism" is Plaintiffs' speech and association. Opp. 1. Their (baseless) theory is that this lawful speech and association is designed to "influence the American public" in support of Hamas. *Id.* Defendants' explicit targeting of speech and association triggers First Amendment scrutiny. Mot. 15-16, 20-21.

Defendants claim that they are regulating "non-expressive conduct," not speech or association. Opp. 14. But if that were enough to defeat First Amendment scrutiny, landmark decisions like *NAACP v. Button,* 371 U.S. 415, 428-29 (1963), would have come out differently. Mot. 14-15.

Nor does Florida's "terrorist" label defeat First Amendment scrutiny. It merely begs the question: who decides that a domestic group is guilty of terrorist conduct, and how? Under the First Amendment, process matters, and the process

here is patently inadequate. *See Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 69-70 (1963) (lack of procedural safeguards violated First Amendment). State politicians labeling an organization as "terrorist" does not make it so, just as the *Bantam Books* commission's labeling a book as "obscene" did not make it so. As Defendants note, in *Bantam Books*, "the speech was never properly adjudicated to be obscene." Opp. 29. So too, here. What matters is the process by which the designation was made.

Defendants are also mistaken that Plaintiffs do not "challenge" the basis for their designation at this stage. Opp. 14. Although the Court may grant Plaintiffs relief without reaching the question, Plaintiffs have consistently argued that the designation is unjustified, and the record supports their argument. *See, e.g.*, Supp.App.69, 86, 91-92, 97, 100; App.105-111, 187, 190. The pretextual nature of the designation is further support for the application of First Amendment scrutiny, and it further confirms that Florida's regime and designation are not narrowly tailored. Supp.App.99-100.

Defendants' *Arcara* arguments all fail. Opp. 15-19, 22, 25. First, *Arcara v. Cloud Books, Inc.*, 478 U.S. 697 (1986), is nothing like this case. The bookstore in *Arcara* made no complaint about process; there was no dispute that illegal activity took place on the premises; and the illegal activity "manifest[ed] absolutely no element of protected expression." 478 U.S. at 705. Here, in contrast, the lack of

process is at the heart of Plaintiffs' First Amendment arguments; Plaintiffs vehemently reject Defendants' allegations; and the alleged illegal activity involves Plaintiffs advocating for religious liberty and the equal treatment of Muslims to "influence" the American public. Opp. 1.

Second, the Supreme Court—in both *Arcara* and *TikTok Inc. v. Garland*, 604 U.S. 56, 68-69 (2025)—recognized that "disproportionate burdens" on expression trigger First Amendment scrutiny, even where a statute regulates only non-expressive activity.[2] Defendants attempt to distinguish *TikTok* on the ground that the "entire function" of the regulated entity was to "engage in and host protected expression." Opp. 19 n.10. But the case turned on the transmission of data to China. 604 U.S. at 80. In any event, Plaintiffs' "entire function" is to engage in protected speech, advocacy, and association.

The severity of a burden alone does not make it *disproportionate*, as Defendants note, Opp. 17; instead, the burden has to be measured against the state's interest and the process by which the burden was imposed. Because Florida already has ample tools to investigate and prosecute terrorism, and because there is

[2] *Norwegian Cruise Line Holdings, Ltd. v. State Surgeon General*, 50 F.4th 1126, 1135 (11th Cir. 2022), did not address this category of regulation. *Contra* Opp. 14-15.

virtually no pre-designation process, the penalty—the complete shuttering of decades-old domestic nonprofits in Florida—is disproportionate.[3]

Third, Plaintiffs' speech and expressive conduct "drew the legal remedy in the first place," *Arcara*, 478 U.S. at 706 (citing *United States v. O'Brien*, 391 U.S. 367 (1968)), which separately triggers First Amendment scrutiny. Opp. 17. Defendants are wrong that because Plaintiffs did not seek preliminary relief on their retaliation claim, this argument is unavailable. In *O'Brien*, the plaintiff did not plead retaliation, yet the Court applied intermediate scrutiny because the conduct triggering the sanction had an expressive element. 391 U.S. at 382. Here, the very activities Defendants call "terrorism" are expressive and associational. Opp. 1; Mot. 15-16.[4] Finally, Defendants assert that the Notice of Intent relies on a "conspiracy" that is not "protected association." Opp. 17 n.9. But the Notice does not allege a criminal conspiracy—it does not identify any crime at all—nor does it remotely explain how CAIR's alleged associations (or speech) would satisfy the elements of a conspiracy. It does not even mention CAIR-Florida.

---

[3] Like the statute in *Minneapolis Star & Tribune Co. v. Minnesota Commissioner of Revenue*, 460 U.S. 575 (1983), Opp. 18 n.10, the designation "singl[es] out" Plaintiffs—expressive associations—for unique, debilitating legal burdens, rather than subjecting them to generally applicable laws.

[4] Plaintiffs do not argue that states can never cite protected speech in criminal prosecutions. Opp. 17 n.9. But here, Florida's designation relies on and targets speech and association, Opp. 1; App.106-111, implicating the First Amendment.

### B. The DTO regime and Plaintiffs' designations violate their freedom of association.

Under the Supreme Court's associational-rights precedents, Defendants cannot escape exacting scrutiny by arguing that the state is "targeting" terrorism. Mot. 14-15. Defendants claim that these cases involve more "direct[]" regulation of association. Opp. 16. But the DTO regime and Plaintiffs' designations regulate association just as (or more) "directly." *Id*. For example, in *Bates v. City of Little Rock*, 361 U.S. 516, 523 (1960), the municipal tax ordinance implicated only associational *privacy*. Here, in contrast, the DTO regime directly regulates Plaintiffs' expressive relationships with board members, employees, volunteers, and donors, which are now themselves criminal. *See, e.g.*, Fla. Stat. § 775.33. The DTO regime and Plaintiffs' designations also directly restrict Plaintiffs' and others' ability to recruit supporters, receive contributions, and work in coalition to advance Plaintiffs' mission. *See, e.g.*, *id.* § 874.10.

These are not ordinary, generally applicable prohibitions accompanied by the protections of the criminal process. *Cf. Bantam Books*, 372 U.S. at 69-70. Instead, the DTO regime empowers political officials to subject nonprofits to unique, debilitating liabilities—to convert their protected associations into criminal ones, and to impose an array of other civil penalties on Plaintiffs and the people who associate with them.

Defendants' arguments to the contrary are unavailing.

First, Defendants contend that the First Amendment protects only "mere association." Opp. 19-20, 22. Not so. The First Amendment protects active participation in associations—for example, the ability of people to associate for expressive purposes through their donations, *see Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 618 (2021) ("*AFP*"), and "group effort" "in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984). *Contra* Opp. 22 (arguing that the criminalization of the "act" of "initiating activity" does not penalize association).

Second, *HLP* supports Plaintiffs. *Contra* Opp. 20-21. Again, the Court expressly warned that its decision upholding federal restrictions on support to *foreign* terrorists did not extend to *domestic* organizations. 561 U.S. at 35, 39.[5] There is no domestic precedent for Florida's DTO regime because the state's attempt to criminalize association by executive fiat is incompatible with the Supreme Court's cases protecting the right to pursue "collective effort on behalf of shared goals" through advocacy, donations, volunteering, and more. *See, e.g.*, *Jaycees*, 468 U.S. at 622; Mot. 11-12, 14-15.

---

[5] That conclusion was the product of several factors: there were factual findings by Congress and the executive concerning the fungibility of support to FTOs; the Court deferred to the federal government's judgments, given the distinct federal powers at play; and there was no dispute that the designated groups engaged in violence. *Id.* at 9, 30-36.

*HLP* did not purport to overturn the Supreme Court's domestic association cases; nor did it hold that the First Amendment protects only passive membership, *contra* Opp. 20-22. The *HLP* plaintiffs argued that the statute criminalized their "mere association" with foreign terrorists. 561 U.S. at 39. The Court rejected this argument on the facts: plaintiffs wanted to actively associate with foreign terrorists. *Id.* at 39-40. Plaintiffs also cited cases holding that criminal intent is necessary to impose criminal liability for association. *Id.* But the Court had already concluded that plaintiffs' foreign support could be criminalized, *id.*, and accordingly, the plaintiffs' domestic association cases did not reach their proposed foreign activities.

Plaintiffs' claims here are altogether different and fall within the heartland of the Supreme Court's domestic association precedents. *See* Amicus Br. of Knight Institute & FIRE, ECF 25. Plaintiffs seek to associate with employees, board members, volunteers, donors, and other supporters in furtherance of their mission. Unlike in *HLP*, Plaintiffs are challenging the designations themselves and possess their own First Amendment rights, in contrast to the foreign groups there. Unlike in *HLP*, the burden extinguishes even Plaintiffs' simple associations with Floridians, because it requires Plaintiffs to cease all operations in the state. And unlike in *HLP*, there is no evidence Plaintiffs engage in violent terrorism; nor has any court concluded that material support to Plaintiffs in the form of speech is legitimately

criminal. Thus, Plaintiffs' associations are fully protected under cases like *Jaycees* and *AFP*.

Third, the out-of-circuit cases cited by Defendants pre-date *HLP* and are distinguishable. Opp. 21; Mot. 17-18, 35-36. After *HLP*, the Ninth Circuit held that the government's restrictions on coordinated advocacy involving a domestic organization violated the plaintiffs' First Amendment speech rights. *Al Haramain Islamic Found., Inc. v. Dep't of Treasury*, 686 F.3d 965, 995-1001 (9th Cir. 2012). And unlike Holy Land Foundation, a charity whose primary activity was sending money abroad, *HLF v. Ashcroft*, 219 F. Supp. 2d 57, 64 (D.D.C. 2002), and whose role in funding foreign terrorism was "incontrovertible," *HLF v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003), Plaintiffs advance their domestic-focused mission through lawful advocacy and association, *contra* Opp. 21.

Fourth, Defendants distort the district court record. Opp. 22-23. The district court never characterized Plaintiffs' associational claim as "hypothetical." Opp. 23. Defendants cite the court's analysis of Plaintiffs' content-discrimination claim, which is not at issue. *See* App.35. Plaintiffs have described how their associations with each other, employees, volunteers, donors, community groups, advocacy coalitions, and others are burdened by the CGPA. *See, e.g.*, App.41-50, 55-65, 68-76, 82-91, 94-95; Supp.App.74-75, 78, 80, 83, 88, 98. Plaintiffs (and others) cannot initiate, organize, plan, finance, direct, or manage, for example, pro bono

legal services, interfaith organizing, voter-registration services, or public engagement with state officials in furtherance of Plaintiffs' mission. *Id.*

Fifth, although Plaintiffs need not show that the DTO regime "targets" association, they have done so. Mot. 15-16. In response, Defendants argue that certain provisions require an intent to further illegal acts. Opp. 22, 24. But Defendants fail to account for the breadth of conduct that has now become criminal due to Plaintiffs' designations. Under Section 874.10, for instance, it is now illegal for anyone to initiate activity in Plaintiffs' interests—and Defendants do not dispute this. If CAIR-Florida were to speak at a student event on Islamophobia, App.190, it would be illegal under Section 874.10. If a CAIR-Florida supporter helped coordinate the event, they would risk liability under Section 775.34: they would have an intent to further CAIR-Florida's "illegal acts," and there is a substantial risk that prosecutors would seek to characterize them as a CAIR-Florida "member." Thus, even though Plaintiffs are not membership-based organizations, their board members, employees, and other supporters face a credible threat of prosecution under Sections 775.34 and 874.05. The Office of Statewide Prosecution has made clear that it will prosecute under the DTO regime "to the fullest extent that the law allows." Dist. Ct. ECF 6-5 (Ex. B at 4:31-56).

Finally, contrary to Defendants' assertion, Opp. 25, Plaintiffs argued that the DTO regime, including the material-support statute, coerces others to suppress

CAIR's speech and disassociate from it, Supp.App.88, 98-99 (citing *NRA v. Vullo*, 602 U.S. 175 (2024)); Supp.App.74-75, 80, 83-84, 88, 98-100 (discussing consequences of not having employees because they face prosecution); Supp.App.79-80, 98, 100, 104-05, 112 (citing declarations discussing people disassociating from Plaintiffs).

### C. The DTO regime and Plaintiffs' designations impose a prior restraint on speech and association.

Defendants acknowledge that a prior restraint "targets protected First Amendment activity by regulating it before it takes place." Opp. 26. And that is precisely the problem here. Mot. 21-25. Three points bear emphasis.

First, the Court's acceptance of the prior restraint argument would not condemn the federal designation programs, which are rooted in uniquely federal powers, rest on the federal government's greater latitude to regulate Americans' relationships with foreigners, and only rarely target entities with U.S. constitutional rights. The resulting infringements on Americans' rights have been upheld following the courts' significant deference to Congress and the Executive Branch. Mot. 17.

Second, Defendants' assertion that Judge Kozinski "accepted that designations *legitimately* change the legal status of speech," Opp. 28, is wrong. *See United States v. Afshari*, 446 F.3d 915, 918-19 (9th Cir. 2006) (Kozinski, J.,

dissenting) (describing the "patent unconstitutionality of the terrorist organization designation process").

Third, even if the Court declines to apply the "prior restraint" label or *Freedman* procedures, the concerns about executive censorship and inadequate procedural protections that animated *Bantam Books* apply with equal force here. At a minimum, Plaintiffs' designations fail under *Bantam Books*.

### D. The DTO regime vests excessive discretion in Florida's executive.

The DTO regime's grant of excessive discretion to executive officers violates the First Amendment. Opp. 29. Defendants argue that the Governor and Cabinet "cannot designate any organization merely on their say-so." *Id.* But the hodgepodge of nebulous allegations in the Notice of Intent, which does not even identify a violation of criminal law, App.105-111, shows that the statutory standards fail to cabin executive discretion.

### E. The DTO regime and Plaintiffs' designations fail First Amendment scrutiny.

Defendants utterly fail to explain how shutting down the speech and advocacy of two domestic civil-rights organizations in fact advances terrorism prevention or is sufficiently tailored to that interest. Defendants do not identify any actual harms resulting from Plaintiffs' speech and association. Opp. 30-33.

Even if the Court were to apply only intermediate scrutiny, *McCullen v. Coakley*, 573 U.S. 464, 494 (2014), controls the analysis, *contra* Opp. 31, because Florida seeks an end-run around existing criminal law.

## II. Plaintiffs Were Deprived of Due Process.

Defendants continue to insist that Florida's regime and the federal terrorist designation programs are joined at the hip. They are wrong.

The United States has constitutional interests that Florida does not. Defendants do not dispute that the federal FTO and SDGT programs are rooted in exclusively federal interests, including in foreign affairs, foreign commerce, immigration, and the maintenance of classified information. Mot. 35-36. Likewise, Defendants do not dispute that Florida lacks comparable interests of its own. *Id.*

These differences matter. Under *Mathews*, courts must weigh the government interests at stake. Mot. 30-31. Accordingly, cases considering due-process challenges to federal designations have accounted for the unique, weighty federal interests on the government's side of the scale. *E.g.*, *Humanitarian L. Project v. Reno*, 205 F.3d 1130, 1137 (9th Cir. 2000) (in Fifth Amendment challenge, describing deferential judicial review of FTO designation as "a necessary concomitant of the foreign affairs power"); *Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 208 (D.C. Cir. 2001) (recognizing limits on pre-designation notice and disclosure of classified evidence based on "security and

other foreign policy goals of the United States"); *HLF*, 333 F.3d at 166 (no due process violation when district court dismissed claim without "the opportunity for discovery," because case involved "sensitive issues of national security and foreign policy"); *People's Mojahedin Org. of Iran v. Dep't of State*, 327 F.3d 1238, 1243 (D.C. Cir. 2003) (due process did not require disclosure of classified information to FTO).

This case is different. The only government interest conceivably at stake is Florida's general interest in preventing crime. Mot. 36. And no authority supports the proposition that the DTO regime can survive the *Mathews* analysis with only that ordinary state interest on the government's side.

As Plaintiffs have explained, *Jenkins v. McKeithen*, 395 U.S. 411, 427-29 (1969), is far more relevant than any of the federal-designation opinions. Mot. 33. And under *Jenkins*, the DTO regime cannot pass constitutional muster: it is undisputed that Plaintiffs had no opportunity to cross-examine witnesses, put on live testimony, or otherwise develop the evidentiary record. While *Jenkins* did not require full criminal procedure, Opp. 37, it required more process than the DTO regime provides.

Defendants' attempts to distinguish *Jenkins* are meritless. That *Jenkins* pre-dates *Mathews*, Opp. 37, is irrelevant. *Jenkins* remains good law and fits comfortably within the second *Mathews* factor. Mot. 33. Like this case, *Jenkins*

involved a state designation regime. It had nothing to do with the federal powers underlying FTO and SDGT designations. Nor is it true that the Supreme Court later "cabin[ed] *Jenkins*" in a footnote. Opp. 37 (citing *Paul v. Davis*, 424 U.S. 693, 706 n.4 (1976)). That footnote merely quoted a dissent in *Jenkins* to rebut the dissent in *Paul*. It did not purport to cabin *Jenkins*.

The DTO regime's narrow state-court appeal would not have rectified the procedural flaws in Plaintiffs' designations. It is too little, too late.

First, as Defendants concede, Plaintiffs would have been unable to develop the evidentiary record before the state court—just as they were unable to develop it in advance of their designations. Opp. 38. Defendants respond that similar limitations apply to judicial review of some federal designations. *Id.* That is no answer: Plaintiffs' First Amendment interests here are greater than the interests in those cases, Mot. 17-18, Florida's interests are far weaker, and regardless, *Jenkins* requires more process.

Second, the DTO regime fails to ensure judicial review in a meaningful timeframe. The district court concluded that, because a state court *might* have ruled on Plaintiffs' appeal "expeditiously," App.22, there was no due-process violation. That was wrong.

Defendants' designation deprived Plaintiffs of liberty interests *after* the vote on designation, but before Plaintiffs could have even gone to state court. Mot. 34.

The canceled student event is not merely a "reputational harm," Opp. 38, and once the cancellation happened, Plaintiffs timely raised it. App.190. Other harms that pre-dated the vote, such as resignations of employees and curtailment of legal services, persisted after the vote but before Plaintiffs could have gone to state court. Mot. 34-35.

Moreover, the theoretical possibility of an expeditious ruling does not satisfy the requirements of due process when delay will result in grievous harm. *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 56 (1993) (due process not satisfied by post-deprivation hearing when, "[g]iven the congested civil dockets in federal courts, a claimant *may* not receive an adversary hearing until many months after the seizure" (emphasis added)).

Defendants' forfeiture argument is baseless. Opp. 38. Plaintiffs have consistently argued that the DTO regime's state-court appeal does not render the regime's procedures constitutionally adequate—including because the DTO regime fails to ensure timely judicial review. Supp.App.95-96; Dist. Ct. ECF 60 at 11-12; *see also Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1312 (11th Cir. 2023) (parties cannot forfeit individual arguments in support of issue on appeal).

## III. The Remaining Factors Favor Plaintiffs.

Florida's designations and their consequences under the DTO regime are unlawful. *Contra* Opp. 40. To obtain complete relief pending appeal and to restore

the status quo, recission of the designations is necessary. Mot. 4-5, 36-37. Defendants' reliance on *Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021), is misplaced. Opp. 40. That case addressed the difference between enjoining officials and erasing *statutes*. 595 U.S. at 44. Plaintiffs' requested injunction runs to the officials with power to publish and remove the designation.

## CONCLUSION

The Court should grant Plaintiffs' motion.

Dated: November 25, 2026

Respectfully submitted,

*/s/ Ashley Gorski*

Ashley Gorski
Hina Shamsi
Patrick Toomey
Charles Hogle
Celin Carlo-Gonzalez
Natalie Smith
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
agorski@aclu.org

Daniel B. Tilley
**ACLU FOUNDATION OF FLORIDA**
4343 West Flagler Street, Ste. 400
Miami, FL 33134
(786) 363-2714
dtilley@aclufl.org

Scott D. McCoy
Aaron Fleisher
Diego A. Soto
Mary Ella W. Simmons
**SOUTHERN POVERTY LAW CENTER**
400 Washington Ave
Montgomery, AL 31604
(786) 347-2056
scott.mccoy@splcenter.org

Manoj S. "Sachin" Varghese
Mark L. Bailey
Kayla Polonsky Gannon
**BONDURANT, MIXSON & ELMORE, LLP**
1201 W. Peachtree St. NW, Ste. 3900
Atlanta, GA 30309
(404) 881-4100
varghese@bmelaw.com

*Attorneys for Plaintiffs–Appellants*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies as follows:

1. This brief contains 3,975 words, excluding the parts of the document exempted by Rule 32(f), in accordance with Plaintiffs–Appellants' motion for excess words, which requested a word limit of 3,975 words and was filed simultaneously with this motion.

2. This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6).

Dated: November 25, 2026

*/s/ Ashley Gorski*
Ashley Gorski
American Civil Liberties Union
Foundation

*Attorney for Plaintiffs–Appellants*